In re Reed Warren SELIGMAN,
Suzanne Rae Seligman,
Debtors.

Bank of America, Plaintiff,

v.

Reed Warren Seligman, Suzanne
Rae Seligman, Defendants.

Bankruptcy No. 11–83003–BEM.
Adversary No. 12–5268–BEM.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 24, 2012.

Beth E. Rogers, Rogers Law Offices, Atlanta, GA, for Plaintiff.

Howard D. Rothbloom, The Rothbloom Law Firm, Marietta, GA, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

BARBARA ELLIS–MONRO, Bankruptcy Judge.

This proceeding is before the Court on the Motion to Dismiss Adversary Proceeding filed by Defendants Reed and Suzanne Seligman ("Defendants"). (Docket No. 10). Plaintiff, Bank of America ("Plaintiff"), seeks to deny Defendants' discharge pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4) and (a)(5). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). After carefully considering the pleadings and applicable law and for the reasons set forth below, the Court concludes that the Plaintiff has alleged sufficient facts for the Court to infer each of the elements necessary to state a claim under § 727(a)(2)(A) and (B), (a)(3), (a)(4) and (a)(5).

## I. BACKGROUND

### A. Procedural History

The Plaintiff initiated this adversary proceeding by filing its Complaint Objecting to Discharge (the "Complaint") on May 14, 2012. (Docket No. 1). Defendants filed their Motion to Dismiss the Adversary Proceeding on June 11, 2012, asserting that Plaintiff has failed to set forth sufficient facts to state a claim that would justify a denial of Defendants' discharge and have therefore failed to satisfy Fed. R. Bankr.P. 7008 and Fed.R.Civ.P. 8. (Docket No. 10). Plaintiff filed its Response to Debtors' Motion to Dismiss Adversary Proceeding Pursuant to Fed. R. Bankr. 7012 and Fed.R.Civ.P. 12(b)(6) and Memorandum in Support Thereof on June 28,-2012. (Docket No. 12).

### B. Factual History

Plaintiff's Complaint sets forth the following facts. Plaintiff loaned money to S & R Seligman, LLC ("S & R") and Defendants guaranteed two of the loans to S & R. Complaint ¶¶ 6–11. S & R and Defendants failed to pay their obligations to Plaintiff and Plaintiff obtained a judgment against Defendants in the amount of $285,954.24 on January 20, 2011. Complaint ¶¶ 13–15.

Plaintiff filed several garnishment actions to collect its judgment, eventually collecting $37,053.52 from Debtor husband (hereinafter "Dr. Seligman") during his employment with Solaris Heart & Vascular. Complaint ¶¶ 16–17. Prior to February, 2011, Dr. Seligman had his wages, in the amount of $15,710 per month, directly deposited into a bank account at Chase Bank (the "Chase Account"). Complaint ¶¶ 27. Beginning in February, 2011, rather than deposit his wages into the Chase Account, Dr. Seligman began operating on a cash basis. Complaint ¶¶ 25–26. Between February, 2011, and November 2011, Dr. Seligman deposited only $28,000 from his wages into the Chase Account. Complaint ¶ 27. Dr. Seligman has no documentation of the disposition of wages that were not deposited, which amounts to $157,000. Complaint ¶¶ 29, 32. Dr. Selig-

man received a gross distribution from his 401(k) account in the amount of $21,174.57 in 2011, but only $16,939.66 of that disbursement was deposited into Defendants' bank account after the filing of Defendants' Chapter 7 case. *Complaint* ¶¶ 34–35.

Previously, Defendants filed a Chapter 11 petition on August 7, 2009 which was dismissed on April 29, 2010. *Id.* at ¶ 14. In their 2009 case, Defendants scheduled the value of their household goods and furnishings at $15,100 and their jewelry at $15,000. *Id.* at ¶ 45. In their current chapter 7 case, filed on November 16, 2011, Defendants scheduled the value of their household goods and furnishings at $5,000 and their jewelry at $2,000 despite Defendants stating at a Rule 2004 examination that they did not sell anything between the time of their two bankruptcy cases. *Complaint* ¶¶ 14, 19, 45, 47. Defendants failed to disclose certain property in the schedules filed in their current case, including: (I) certain articles of jewelry and watches; and, (ii) a security deposit for an apartment in Alabama. *Complaint* ¶¶ 47, 49, 50, 51–54. Defendants stated in Schedule I filed in their current case, that both Defendants were unemployed, had $0 projected monthly income and failed to provide any information in response to line 17 of Schedule I that requires Defendants to "[d]escribe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document." *Complaint* ¶ 33. Plaintiff alleges that this information is inaccurate because Dr. Seligman had income in November, 2011 and signed an employment contract with an Alabama health group one day after his bankruptcy filing with an annual salary of $450,000; a contract that he negotiated during October, 2011, and received approximately one week before he signed the same. *Complaint* ¶¶ 55–58, 62. Defendants' schedules disclose income

of $297,177 in 2009 and $292,349 in 2010, respectively; Dr. Seligman's future wages, as provided for in the employment contract Dr Seligman signed one day after the filing of the Defendants' current Chapter 7 case, represented a substantial increase in wages that was not disclosed in Defendants' Schedules and Statement of Financial Affairs. *Complaint* ¶¶ 64–66.

## II. DISCUSSION

### A. *Motion to Dismiss Standard*

Federal Rule of Civil Procedure 8(a)(2), made applicable to adversary proceedings by Fed. R. Bankr.P. 7008, requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require detailed factual allegations, "it demands more than an unadorned-the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (internal citations omitted)). However, the Court is not required to accept as true legal conclusions couched as factual allegations or unwarranted deductions of fact. *Id.* at 1950; *accord Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010). Thus, the Plaintiff's complaint must state sufficient factual allegations to infer each element of the cause of action asserted. *Anderson v.*

*Citizens Fid. Mort. Corp. (In re Money),* 375 B.R. 704, 707 (Bankr.N.D.Ga.2007).

### B. Analysis of Claims

#### 1. Motion to Dismiss Action to Determine Dischargeability of Debts Under § 727(a)(2)(A) and (B)

A claim under § 727(a)(2) "has two components: (1) a transfer or concealment of property of the debtor or the estate and (2) an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *See Parnes v. Parnes (In re Parnes),* 200 B.R. 710, 713 (Bankr. N.D.Ga.1996) (citing *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993)). "The improper act can either be within one year of the petition or post-petition." *Id.* "Constructive fraud is insufficient to support a denial of discharge under this section." *See Segell v. Letlow (In re Letlow),* 385 B.R. 782, 795–6 (Bankr.N.D.Ga.2007). Most courts agree that actual fraudulent intent can be proven by circumstantial evidence surrounding the debtor's objectionable course of conduct and inferred from extrinsic evidence. *Id.; Playnation Play Sys., Inc. v. Howard,* 2004 WL 5848047, 2004 Bankr.LEXIS 1804, (citing *Future Time, Inc. v. Yates,* 26 B.R. 1006, (M.D.Ga. 1983) *aff'd* 712 F.2d 1417 (11th Cir.1983); *Menotte v. Cutaia (In re Cutaia),* 410 B.R. 733, 738 (Bankr.S.D.Fla.2008)) (citing *Furr v. Lordy (In re Lordy),* 214 B.R. 650, 664 (Bankr.S.D.Fla.1997); *Taunt v. Patrick (In re Patrick),* 290 B.R. 306, 310 (Bankr. E.D.Mich.2003)). Proving intent can be as simple as recounting one singular act or omission, or displaying a pattern of fraudulent behavior. *Royer v. Smith (In re Smith),* 278 B.R. 253, 257 (Bankr.M.D.Ga. 2001).

The Plaintiff asserts that with the intent to hinder, delay or defraud a creditor, both within one year of the petition date and after the petition date, Defendants intentionally concealed wages, 401(k) distribution(s) and the property purportedly purchased with these funds [1] from their creditors. In support of this assertion, Plaintiff argues that after it obtained a garnishment against the Defendants and within one (1) year before filing a Chapter 7 petition Dr. Seligman began "operating in cash" by terminating the direct deposit of his wages, depositing small amounts into the Chase Account and withdrawing small amounts from ATMs. Plaintiff alleges that the cessation of the direct deposit of Dr. Seligman's wages resulted in $157,100 in funds that were not deposited into the Chase Account and were thus, concealed. Plaintiff further alleges that Dr. Seligman received a distribution from his 401(k) in excess of $21,000 and that only a portion of those funds were deposited into Dr. Seligman's bank account after the filing of the Chapter 7 petition. Plaintiff asserts that the Defendants held the money withdrawn from Dr. Seligman's 401(k) account in cash until after the filing of the petition, and then only partially deposited the funds in an effort to conceal them from Plaintiff in violation of § 727(a)(2)(B).

Defendants argue that Plaintiff has failed to state a claim under § 727(a)(2)(B) because Plaintiff failed to plead that Dr. Seligman's 401(k) account was property of the estate; and that it, in fact, was not property of the estate under § 541(b). Defendants argue, with respect to Plaintiff's § 727(a)(2)(A) claim, that Plaintiff has not alleged facts to support a finding that

---

1. What property or when Plaintiff may have become aware of property purchased with funds is not specified in the complaint. Certainly, evidence with regard to these issues would be relevant to the final adjudication of Plaintiff's claims.

any transfer, removal, mutilation, destruction or concealment of property occurred.

Although it is unclear from the Complaint whether Plaintiff alleges that the withdrawal of 401(k) funds occurred pre-petition or post-petition, at this point in this proceeding that is not fatal to Plaintiff's claims under § 727(a)(2)(B). *See Complaint* ¶¶ 34, 35, 61. This is because if the withdrawal was made prior to the Petition Date, then the funds withdrawn constitute property of the estate and the failure to account for those funds could amount to concealment of property of the estate. *See In re Hipple*, 225 B.R. 808, 813 (Bankr.N.D.Ga.1996) (funds withdrawn from SEP/IRA are property of estate); *see also Bauman v. Post (In re Post)*, 347 B.R. 104, 109–12 (Bankr.M.D.Fla.2006). If the withdrawal was made post-petition, the funds would be exempt property and the withdrawal would not support an inference of concealment, however, if the withdrawal occurred post-petition, and if the amounts alleged by Plaintiff are established at trial, the discrepancy between the funds held in a 401(k) account and the amounts set forth on Debtor's Schedule B could create an inference of fraudulent intent. Thus, the facts alleged regarding Defendants' withdrawal of 401(k) funds are relevant to Defendants' intent and could, if proven at trial, support a finding of concealment.

With respect to Plaintiff's § 727(a)(2)(A) claims, Plaintiff has alleged that after it began collection activity against Dr. Seligman that he stopped directly depositing his wages into the Chase Account and began operating in cash. Plaintiff alleges further that this change in behavior resulted in in excess of $150,000 being keep from creditors' claims. These facts, if proven at trial, could establish that Dr. Seligman changed his behavior after entry of a judgment and issuance of garnishments that resulted in substantial

funds being kept from creditors' claims. These facts are also relevant to establishing Defendants' intent and could support a finding of fraudulent intent. Thus, taking Plaintiff's allegations as true, as the Court must, the Court finds that Plaintiff has alleged sufficient facts to withstand Defendant's motion to dismiss Plaintiff's claims under § 727(a)(2)(A) and (B).

### 2. Motion to Dismiss Action to Determine Dischargeability of Debts Under § 727(a)(5)

In order to deny a discharge under § 727(a)(5), the objecting party must prove that a debtor has "failed to explain satisfactorily a loss or deficiency of assets to meet the debtor's liabilities." *Menotte v. Moore (In re Moore)*, 375 B.R. 696, 704 (Bankr.S.D.Fla.2007). Plaintiff must demonstrate that assets have been lost, after which the burden shifts to the defendant to satisfactorily explain the loss. *Id.* "Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are unsatisfactory." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir.1984). Accordingly, "[t]he debtor will be required to produce some kind of direct, specific evidence in order to defeat an objection [of discharge] based upon failure to explain a loss of assets." *Id.* at 711 (quoting *Wortman v. Ridley (In re Ridley)*, 115 B.R. 731, 737 (Bankr.D.Mass.1990)).

Plaintiff asserts that the Defendants have failed to provide documentation of the disposition of $157,100 in undeposited wages and cash withdrawals from the Chase Account. *Complaint* ¶ 32. Plaintiff asserts further that Defendants have thus failed to explain satisfactorily a loss of assets to meet liabilities that were incurred between February 2011 and the Petition Date in violation of § 727(a)(5). *Complaint* ¶¶ 32, 36, 39. Taking the alle-

gations in the Complaint as true, Plaintiff has alleged that Defendants have dissipated in excess of $150,000 in wages without explanation and has thus alleged sufficient facts to withstand Defendants' Motion to Dismiss the claims asserted pursuant to § 727(a)(5).

### 3. Motion to Dismiss Action to Determine Dischargeability of Debts Under § 727(a)(3)

■■■ To establish a prima facie action under § 727(a)(3), a plaintiff must show by a preponderance of the evidence that: (1) the debtor failed to keep or preserve adequate records, and; (2) that such failure makes it impossible to ascertain the debtor's financial condition. *Moore,* 375 B.R. at 702 (Bankr.S.D.Fla.2007). Once plaintiff has demonstrated that the books and records are inadequate the burden shifts to the debtor to explain why the records were not kept. *Phillips v. Nipper (In re Nipper),* 186 B.R. 284, 289 (Bankr. M.D.Fla.1995). Section 727(a)(3) has been consistently read to impose an affirmative obligation on defendants to keep records appropriate to their circumstances. *Hughes v. Lieberman (In re Hughes),* 873 F.2d 262 (11th Cir.1989). The debtor's intent is not relevant. *Calisoff v. Calisoff (In re Calisoff),* 92 B.R. 346, 356 (Bankr. N.D.Ill.1988).

■■■ Plaintiff alleges that Defendants failed to provide any documentation regarding the disposition of undeposited wages and cash withdrawals in violation of § 727(a)(3). Although, as Defendant argues, Plaintiff did not allege with specificity what records are missing, Plaintiff does allege the inability to ascertain the whereabouts of a significant amount of wages. From these facts, it is possible to reasonably infer that it is not possible to discern Defendants' financial condition. These allegations and the reasonable inferences that may be drawn from them are sufficient to deny Defendants' motion to dismiss Plaintiffs' claims pursuant to § 727(a)(3).

### 4. Motion to Dismiss Action to Determine Dischargeability of Debts Under § 727(a)(4)

■■■ To justify denial of a discharge under § 727(a)(4)(A) the false oath alleged must be (1) fraudulent and (2) material. *See Swicegood v. Ginn,* 924 F.2d 230, 232 (11th Cir.1991). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* (quoting *Chalik,* 748 F.2d at 618 (11th Cir.1984)). "Deliberate omissions from schedules or the statement of financial affairs may constitute false oaths or accounts." *Id.* at 618 n. 3; *see also Moore,* 375 B.R. at 703 (Bankr.S.D.Fla.2007); *see also Segell,* 385 B.R. at 795–6 (Bankr.N.D.Ga.2007). Since defendants are rarely willing to admit fraudulent intent, actual intent may be inferred from circumstantial evidence. *See Segell,* 385 B.R. at 795–6 (Bankr.N.D.Ga. 2007). A series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive. *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992). However, the discharge may not be denied when the untruth was the result of a mistake or inadvertence. *Id.*

■■■ The Plaintiff argues that because Defendants' testified that nothing was sold between the time Defendants filed their Chapter 11 case and their Chapter 7 case that Defendants purposefully omitted personal property from their Schedules and further that because of the decrease in values in the property disclosed that De-

fendants purposefully undervalued their assets. *Complaint* ¶ 45–50. Plaintiff alleges further that Defendants purposefully and knowingly failed to disclose, on their Schedules and at the 341 meeting, a real property lease in Alabama signed pre-petition, a reasonably anticipated increase in Dr Seligman's future wages and the fact that Dr. Seligman had income during November, 2011, despite listing himself as unemployed in Schedule I. *Complaint* ¶¶ 50–55. Finally, Plaintiff alleges that Dr. Seligman signed an employment contract worth over $450,000 a year the day after he filed his bankruptcy petition, a contract and employment of which he was aware prior to the Petition Date. *Complaint* ¶¶ 56, 62–63.

█ While minor and isolated omissions do not necessarily amount to a false oath under § 727(a)(4), a pattern of omissions and undervaluing property can refute the claim that any errors were unintentional. *Beaubouef,* 966 F.2d at 178 (5th Cir.1992). Plaintiff has set forth facts, which taken as true, would allow a reasonable inference of intentional failure to fully and completely disclose the Defendants' financial condition and assets in the Statement of Financial Affairs and Schedules. Accordingly, Defendants' Motion To Dismiss Plaintiff's claims pursuant to § 727(a)(4) is denied.

Therefore, it is **ORDERED** that the Defendants' Motion to Dismiss is **DENIED.**

IT IS SO ORDERED.